[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 12, 2009
THOMAS K. KAHN
CLERK

No. 08-11925
Non-Argument Calendar
_____

D. C. Docket No. 06-00002-CV-CAR-5

SYLVIA HOOKS,

Plaintiff-Appellant,

versus

GEORGIA DEPARTMENT OF CORRECTIONS,
MALINDA ANDERSON,
JAMES E. DONALD,
GUY HICKMAN,
VICTORIA MALONE,
JOHN TRUSSELL,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(February 12, 2009)

Before CARNES, MARCUS and ANDERSON, Circuit Judges.

PER CURIAM:

After her employment as a probation officer was terminated, Sylvia Hooks sued the Georgia Department of Corrections (DOC) for discrimination on the basis of race, color, gender, age, disability, and retaliation. The district court granted summary judgment as to all of her claims. Hooks, an African-American woman, appeals only her discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a), 2000e-3(a), and asserts that she was terminated on the basis of her race, color, and sex, and that she was retaliated against for filing complaints and grievances. The district court properly granted summary judgment, and we affirm.

**I.**

We review de novo a district court's grant of summary judgment. Brooks v. County Comm'n of Jefferson County, 446 F.3d 1160, 1161–62 (11th Cir. 2006). "Summary judgment is appropriate when 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" Wilson v. B/E/ Aerospace, Inc., 376 F.3d 1079, 1085 (11th Cir. 2004) (quoting Fed. R. Civ. P 56(c)). "A genuine factual dispute exists if the jury could return a verdict for the non-moving party." Id. (quotation marks and citation

2

omitted).  In making that determination, we view all of the facts in the record in the light most favorable to the non-moving party.  Id.  However, the non-moving party must offer more than "a mere scintilla of evidence" in support, such that "the jury could reasonably find for that party."  Brooks, 446 F.3d at 1162 (citation omitted).

## II.

Hooks first argues that illegal discrimination on the basis of her race, color, or gender caused the DOC to terminate her employment.  Title VII provides that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Claims of illegal disparate treatment based on circumstantial evidence are analyzed under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1978).  Brooks, 446 F.3d at 1162.

Accordingly, a plaintiff must first establish a prima facie case of discrimination.  Id.  To that end, a plaintiff must show that: "(1) she belongs to a protected class; (2) she was qualified to do the job; (3) she was subjected to adverse employment action; and (4) her employer treated similarly situated employees outside her class more favorably."  Crawford v. Carroll, 529 F.3d 961,

3

970 (11th Cir. 2008). In this case, the only dispute is whether Hooks failed to establish a prima facie case of discrimination because she failed to meet the fourth prong— she failed to produce evidence that the DOC treated similarly situated employees outside her protected class more favorably.

"In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Maynard v. Bd. of Regents, 342 F.3d 1281, 1289 (11th Cir. 2003) (quotations omitted). "We require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999).

The DOC's Notice of Final Action letter stated that Hooks was fired for "continual obstruction of [her] supervisors' efforts to determine [her] fitness for duty including ability to attend and participate in basic probation officer training." The letter also noted that Hooks failed to cooperate with her supervisors as they attempted to train her, failed to cooperate with her co-workers as they attempted to show her how court documents and defendants were processed, and even failed to cooperate with a weapons instructor at a firing range, thus ignoring firing regimens

4

and protocols. The letter adds that Hooks delayed and stonewalled for months her supervisors' efforts to ascertain whether she was in fact qualified for the physical training that she knew was necessary to keep her job as a probation officer. It concludes that Hooks never did provide adequate medical information to her supervisors, and that she intentionally scheduled medical test procedures to conflict with the dates of her physical training when it was finally scheduled.

Though Hicks appears to argue that these assertions by the DOC are false, she provides no specific facts that refute the DOC's version of these events. See Barfield v. Brierton, 883 F.2d 923, 934 (11th Cir. 1989) (The party opposing summary judgment "must set forth specific facts," not conclusory allegations). Therefore, the central misconduct in this case is Hooks' repeated refusals to provide medical information about her condition and the delay of basic physical training— which DOC policy requires be started within 60 days of employment— for over six months.

Hooks names no similarly situated comparators. She lists her supervisor, Mr. Trussell, along with Malinda Anderson, Victoria Malone, Kenneth Wylie, and Jackie Gooch as DOC employees who allegedly misbehaved in various ways but were not punished. Specifically, these are the other employees and supervisors who allegedly wronged Hooks— but Hooks does not claim that any of them were

insubordinate by stonewalling necessary physical training without providing any medical reason. Therefore, Hooks cannot meet the fourth prong of the prima facie case of discrimination, because she has not presented any employee at all, much less one outside of her protected class, who was retained by the DOC despite engaging in conduct similar to that for which she was terminated. Accordingly, we affirm the grant of summary judgment on Hooks' discrimination claim.

## III.

Second, Hooks contends that her termination was based on illegal retaliation for a grievance that she filed against her supervisor Trussell. The district court found that although Hooks succeeded in making a prima facie case for retaliation, she failed to offer evidence that the DOC's proffered legitimate reason for her termination was pretext for retaliation.

Title VII prohibits retaliation by an employer against an individual because the individual has opposed an unlawful employment practice or made a charge of discrimination. 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, "the plaintiff must show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression." Cotton v. Cracker Barrel Old Country Store, Inc., 434 F.3d 1227, 1233 (11th Cir. 2006) (quotations and

6

citation omitted). In this case, the DOC does not dispute the district court's finding that Hooks established a prima facie case for retaliation. In October 2004, Hooks filed a grievance against her supervisor Trussell, who evidently was aware of it. Less than three months later, Trussell recommended that Hooks be terminated.

Once the plaintiff establishes a prima facie case of retaliation, the burden shifts to the employer "to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action." Johnson v. Booker T. Washington Broadcasting Serv., Inc., 234 F.3d 501, 507 n.6 (11th Cir. 2000). In this case, the central reason offered by the DOC for terminating Hooks was that she had repeatedly obstructed her supervisors' attempts to determine whether she was physically qualified for the training her job required.

After the employer offers a legitimate reasons for the termination, the burden shifts back to the plaintiff to demonstrate that the employer's proffered explanation is a pretext for retaliation. Crawford, 529 F.3d at 976 (quotation marks omitted). In the context of Title VII discrimination claims, we have held that "[t]o avoid summary judgment the plaintiff must introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination." Brooks, 446 F.3d at 1163 (citation and alterations omitted). Similarly, for retaliation claims Hooks must offer "concrete evidence in the form

7

of specific facts which show that the defendant's proffered reason is mere pretext. Mere conclusory allegations and assertions will not suffice." Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990). Hooks must "cast sufficient doubt on the proffered reasons to permit a reasonable factfinder to conclude that the reasons actually were a pretext for . . . retaliation." Crawford, 529 F.3d at 976.

First, Hooks argues that the reason given by the DOC for her termination was demonstrably false. On December 22, 2004, Trussell received a letter from Hooks' doctor stating that Hooks was not released for physical training. Because Trussell recommended that Hooks be terminated shortly after he received the letter, she argues that the DOC's decision to fire her could not legitimately be based on a failure to receive her medical information. However, the December 22 letter did not contain the actual medical information that the DOC required, and it was received more than two months after the *second* deadline given to Hooks for submitting medical documentation. Thus the letter does not call into question the DOC's central reason given for her dismissal— the continual obstruction of her supervisors' attempts to determine her fitness for physical training.

Hooks makes a number of other arguments in an effort to discredit Trussell, but none of them suggest that she was actually terminated because she had filed a grievance against him in October 2004. In fact, a significant portion of the alleged

8

mistreatment of Hooks occurred well before she even filed the grievance. Specifically, the initial flap about the size and location of Hooks' workspace when she was first hired appears to have ended before October, as did the "evils" she allegedly incurred at the hands of her initial supervisor Tonya Wharton. Moreover, Hooks' grievance against Trussell came just three days after he issued her an official reprimand for failing to supply the necessary and repeatedly requested medical information.

Hooks also argues that Trussell committed perjury at his deposition regarding the timing of his decision to recommend her termination. Initially Trussell stated that he decided to recommend her termination before he received her doctor's letter on December 22, but once shown evidence to the contrary, he corrected his statement and conceded that he made that decision around December 28. In light of the fact that the December 22 letter still did not provide adequate medical documentation for Hooks' excusal, it seems irrelevant exactly when Trussell recommended that she be terminated. Even by December 28, Hooks had not yet provided the medical information to support an excuse or delay in physical training, much less met the physical requirements that she knew the DOC required her to meet in order to hold her job.

Finally, Hooks argues that Trussell told a potential employer of Hooks' that

9

she was ineligible for rehire within the DOC, thus sabotaging her potential following employment. But Trussell testified that he found Hooks in her office on the day of her termination stealing state property and deleting state records accessible from her computer. Hooks does not appear to dispute that this occurred, and it is a legitimate reason for Trussell not to recommend her to another potential employer. It also has nothing to do with her grievance against him.

In sum, the record shows that Hooks failed to "cast sufficient doubt on the proffered reasons to permit a reasonable factfinder to conclude that the reasons actually were a pretext for . . . retaliation." Crawford, 529 F.3d at 976. From June through December 2004, Trussell repeatedly prodded Hooks to attend the basic physical training required for her job by DOC policy. Despite requests in June and August, reminders in September, and an official reprimand in October, Hooks refused to attend the training or provide medical documentation for why she could not. Finally she was fired. Title VII does not protect such obstinacy or insubordination. We affirm.

**AFFIRMED.**