**Vreeland G. JOHNSON and Janet Johnson, Plaintiffs,**

v.

**U.S. MORTGAGE CO., Defendant.**

**Civil Action No. 95–D–721–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Oct. 23, 1996.

Charles E. Clark, Birmingham, AL, for plaintiffs.

Mark T. Davis, Montgomery, AL, Mario W. Mainero, Jr., Newport Beach, CA, Jan A. Zemanek, Newport Beach, CA, for defendant.

## MEMORANDUM OPINION

DE MENT, District Judge.

Before the court is defendant U.S. Mortgage's ("USM") Motion for Summary Judgment and supporting memorandum filed October 2, 1995. Plaintiffs Vreeland G. Johnson and Janet Johnson ("plaintiffs") filed a response thereto on November 15, 1995. USM filed its reply to plaintiffs' response on November 22, 1995. After careful consideration of the arguments of counsel, the case law, and the record as a whole, the court finds that USM's motion is due to be granted.

### JURISDICTION AND VENUE

Based upon 28 U.S.C. § 1332, the court properly exercises subject matter jurisdiction over this action. The parties do not contest personal jurisdiction or venue.

### FINDINGS OF FACT

■ On October 29, 1983, plaintiffs purchased real property located at 522 Church St. in Andalusia, Alabama, from James and Patricia Forbes. J. Johnson Dep. at 11, 12, 14; Manson Dep. at 5. Plaintiffs entered into a "General Sales Contract" with the Forbeses, in which they agreed to pay the Forbeses $72,000 for the property. J. Johnson Dep. 21–23, Ex. 3. Specifically, the plaintiffs agreed to assume the Forbeses' existing mortgage of $36,310.00 and to pay the Forbeses $35,690.00,[1] which represented the difference between the $72,000 purchase price and the existing mortgage. Id. The deed conveying the property to the plaintiffs was executed by the Forbeses on November 11, 1983. See Pls.' Ex. A.[2]

The existing mortgage was initially entered into on February 27, 1978, by the Forbeses with First Federal Savings & Loan Association of Andalusia ("First Federal"), in Andalusia, Alabama. See J. Johnson Dep., Ex. 2. The mortgage was secured by a Promissory Note in the amount of $40,000. Id., Ex. 1. The mortgage agreement stated that:

> The debt created by this mortgage and all advances thereon, together with interest at eight and three-fourths percent per annum, is payable in monthly installments of $363.80 on the first day of each and every consecutive month commencing on April 1, 1978, each of said payments to be applied first to interest then due and the remainder upon the unpaid balance until said debt is paid in full.

J. Johnson Dep., Ex. 2. Additionally, the mortgage agreement required that the mortgagors pay the principal of $40,000:

> together with interest thereon at the rate of 8 3/4 percent per annum on the unpaid balance of the principal sum and on all advances and obligations incurred thereafter before payment of said note in full, or during the life of this mortgage. This mortgage shall also secure any additional loans and advances to MORTGAGORS, evidence of such additional loans and advances to be promissory notes, payable according to the terms of said notes and if the MORTGAGORS shall pay all such indebtedness represented by all of said promissory notes and shall perform all other covenants and agreements herein contained.

Id. The Promissory Note ("note") mirrored the mortgage agreement with regard to the principal debt, monthly payments, and interest rate. J. Johnson Dep., Ex. 1. The note also stated that "any and all advances upon the principal debt [would] be secured by the original mortgage dated February 27, 1978."

---

**1.** Five thousand dollars of the $35,690 represented "earnest money." J. Johnson Dep., Exhibit 3.

**2.** Plaintiffs submit the deed into evidence as Exhibit A but fail to authenticate it. Nevertheless, because defendants do not appear to contest the

authenticity of the deed, but rather only the manner in which it was submitted, i.e., without an accompanying affidavit, see Def.'s Reply Br. at 4, the court will consider the deed in its recitation of the facts.

*Id.* Finally, the Forbeses covenanted in the mortgage to keep the mortgaged property "in good repair and insured against fire and other casualties to cover the unpaid balance due on the entire debt with the MORTGAGEE." J. Johnson Dep., Ex. 2. If the Forbeses failed to perform such covenants, the mortgage agreement authorized the Mortgagee to perform the covenant itself and "any money expended in this behalf shall be secured as an additional lien under the terms of this mortgage." *Id.* Plaintiffs do not deny the mortgage or the note. Pls.' Br. at 2, ¶ 2.

According to payment records from First Federal, there were four advances made on the Forbeses' loan to Bass–Caton Insurance Agency. J. Johnson Dep., Ex. 3–A. Plaintiff Janet Johnson provided the bank records, which were given to her by an employee at Colonial Bank, formerly First Federal Bank. J. Johnson Dep. at 41–42. On February 27, 1978, First Federal advanced $392.00 with a notation of "Bass–Caton Insurance Agency," creating a principal amount of $40,392.00. Similar advances, with a hand-written notation of "Bass–Caton" were made on March 9, 1979, for $433.00, and March 21, 1980, for $453.00. *Id.* First Federal's payment records, in the form of a "Mortgage History Report," reflect an additional disbursement of $541.00 on March 12, 1981, and a disbursement of $446.00 on February 12, 1982. *Id.* The last disbursement, however, is set off by the borrower's payment of $446.00. *Id.; see also,* Manson Dep. at 8. The advances total $1,819.00, which was added to the principal amount of $40,000. Plaintiffs do not dispute this amount was added to the principal, but rather dispute the accuracy and authenticity of First Federal's records. *See* Pls.' Br. at 3.

Some time prior to April, 1994, plaintiffs discovered that the assumed mortgage had been incorrectly amortized and that they had, in fact, been overpaying the mortgage by $10.20 per month. J. Johnson Dep., Ex. 8. After taking over the servicing rights of the mortgage, USM[3] agreed that prior servicers had failed to credit plaintiffs' account properly, and, in April, 1994, USM credited plaintiffs' account as of the time of each payment and recalculated the proper amounts to be applied to principal and interest. Manson Dep. at 6. This redistribution created a principal balance as of August 1, 1994, of $14,547.64. *Id.* Although in their complaint plaintiffs allege that their principal balance has been incorrectly credited, *see* Pls.' Compl. ¶ 10, the plaintiffs do not appear to contest that the improper amortization has been corrected.

Instead, the plaintiffs contest the advances made on the mortgage and added to the principal. In their complaint, plaintiffs allege that USM "has attempted to impose fees and charges in amounts not provided for under the terms of said note and mortgage, and has demanded payment in excess of the amount required to discharge said obligation under its terms, has misrepresented[4] the terms of the note and has engaged in willfully reckless conjecture in refusing to accept a payoff of the note pursuant to its terms." Pls.' Compl., ¶ 11. Apparently, plaintiffs contend that the advances were improperly made, that they should not be responsible for those advances, and that the account should once again be recalculated, based on a $40,000 mortgage without any advances, with payments redistributed between principal and interest at the time of each payment.[5] Pls.' Br. at 4. USM, however, contends that the advances were properly made and the amortization scheme currently being applied to the plaintiffs' account is arithmetically correct. Def.'s Br. at 14–15. There does not appear to be any controversy concerning the amortization of the advances, but rather

---

3. The last in a long line of mortgage servicers, USM acquired the servicing rights to the mortgage in April, 1994. Manson Dep. at 6.

4. The court is unable to determine whether plaintiffs are attempting to bring a claim of fraud against USM. If plaintiffs are indeed trying to bring a claim of fraud, they have failed to plead said fraud with particularity, as required by Rule 9(b) of the *Federal Rules of Civil Procedure.* Con-

sequently, any claim of fraud is due to be dismissed under Rule 12(b)(6) of the *Federal Rules of Civil Procedure* because plaintiffs have failed to state a claim upon which relief can be granted.

5. The court has inferred this contention from plaintiffs' brief and pretrial order, which have proven to be vague and unhelpful to the court.

whether the advances should have been made at all.

Plaintiffs bring this action for an accounting and declaratory judgment as to the amount required to discharge their obligation to USM under the note. Pls.' Compl. ¶ 12. Plaintiffs claim that as of November, 1995, they "owe[d] about $4,000.00," while USM claims the plaintiffs owe[d], as of October, 1995, $10,763.35. Pls.' Br. ¶ 9; Def.'s Br. at 17. Additionally, plaintiffs claim that USM's conduct has been "outrageous" under the tort law of Alabama, causing mental suffering and distress and directly impairing their ability to sell their house if they so choose. *Id.* ¶ 14. Plaintiffs request $10,000 in compensatory damages and such punitive damages as determined by a jury. *Id.* at 4.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court has stated:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The Supreme Court of the United States has noted, on the other hand, that "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). Summary judgment is improper "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. *See Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

At the summary judgment stage, the court must construe the evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552 (citing Fed.R.Civ.P. 56(c)). Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his or her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Id.* at 587, 106 S.Ct. at 1356; *see also Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510.

### DISCUSSION

**I. Plaintiffs are Estopped from Challenging Validity of Mortgage**

Under Alabama law, once a party has assumed the payment of a mortgage debt

and acquired the property, that party "will not be allowed to question the validity of the loan or any part thereof." *Appelbaum v. First Nat'l Bank of Birmingham,* 235 Ala. 380, 179 So. 373, 375 (1938); *see also Kennedy v. Brown,* 61 Ala. 296 (1878). In the instant case, USM argues that because plaintiffs expressly assumed the note and mortgage in the amount of $36,310.00, they are estopped from attacking the validity of the mortgage, including the amount. The court finds USM's argument persuasive and that plaintiffs are barred from attacking the validity of the advances made on the principal while the Forbeses held the mortgage.[6]

*Kennedy v. Brown,* is a case closely analogous to the instant case. In *Kennedy,* the mortgagee was attempting to foreclose on the property, and in order to escape the foreclosure action, the grantee of the mortgagor, who has assumed the mortgage as part of the purchase price of the property, claimed the mortgage was invalid. 61 Ala. at 296. The Alabama Supreme Court found that "[o]ne buying lands which the vendor had encumbered by mortgage, to secure a debt to a third person, and expressly agreeing with the seller and the mortgagee to pay such debt, which is deducted from the cash payment required, subordinates his title to the mortgage, and is estopped from denying its validity." *Id.* The Alabama Supreme Court reiterated this holding in *Channell v. Deal Lumber Co.,* 209 Ala. 90, 95 So. 362 (1923), an action challenging a general description of property in a mortgage.

Similarly, in *Appelbaum v. First Nat'l Bank of Birmingham,* 235 Ala. 380, 179 So. 373 (1938), the grantee of the mortgagor attempted to forestall a foreclosure by attacking the execution of the mortgage. The Court specifically stated that "while there is no assumption of the mortgage debt expressed in the deed, the evidence clearly shows that she assumed the payments of the

mortgage debt as part of the consideration of the conveyance to her of the property." *Id.* 179 So. at 374. The Court also went on to uphold the precedent established in *Kennedy* some fifty years earlier, declaring that "the complainant having acquired the property and assumed the payment of the mortgage debt, she will not be allowed to question the validity of the loan or any part thereof."

■ In the instant case, there is no question that the plaintiffs assumed the Forbeses' mortgage. This is expressly stated in the sales contract, and both plaintiffs admitted as much in their depositions. *See* J. Johnson Dep. at 21; V. Johnson Dep. at 28. Additionally, plaintiffs' admissions notwithstanding, even if plaintiffs were correct in their argument that the sales contract and deed have merged and there is no memorialization of their assuming the Forbeses' mortgage, it is clear from *Appelbaum* that the plaintiffs' monthly payments for the last 13 years is sufficient to show they assumed the payments the mortgage debt as part of the consideration of the conveyance to them of the property. Furthermore, the plaintiffs have been in possession of the property for almost 13 years. Consequently, the plaintiffs may not, at this late date, be permitted to challenge the validity of the mortgage they assumed or the advances made thereon.

## II. Plaintiffs have Failed to Present A Genuine Issue of Material Fact

Although the court has already found that plaintiffs are estopped from attacking the validity of the mortgage amount, the court also finds, in the alternative, that plaintiffs have failed to demonstrate a genuine issue of material fact. Plaintiffs attempt to create an issue of material fact by disputing whether the advances on the Forbeses' mortgage were ever actually made. Specifically, plaintiffs argue that the produced records have

---

**6.** Plaintiffs argue that under the doctrine of "functus officio," the deed and sales contract have merged, making the deed the sole memorial of the parties' agreement, and, consequently, USM may not base a claim on the sales contract, which contained an express assumption of the mortgage. The court notes, however, that under plaintiffs' reasoning, USM would not be able to make *any* claim against the plaintiffs on the

mortgage and the plaintiffs would be able to escape, in effect, *any* obligations under the mortgage. Such a result would be inequitable at best. Moreover, plaintiffs' reasoning is self-defeating; carried out to its logical conclusion, plaintiffs' reasoning would disallow any action based on the mortgage, including plaintiff's own declaratory action.

not been identified by anyone, that there is no proof that the records are correct or that the terms of the mortgage were not properly observed.

■ As previously noted in this opinion, the party moving for summary judgment has the initial burden to show the court that judgment as a matter of law is appropriate. Once this requirement has been met, the burden of production shifts to the nonmoving party who must specifically identify facts showing a material issue for trial. The nonmoving party may not rely solely on the complaint but must produce evidence from depositions, interrogatories, affidavits, or another source. USM has explained the presence of the advances and pointed to provisions of the mortgage allowing such advances. The plaintiffs, however, have failed to produce any evidence of the alleged inaccuracy of the records.[7] Instead, they seek to shift the burden of production back to the USM by declaring there is just "no proof" that the advances were actually made. Therefore, the court finds, in the alternative, that plaintiffs have failed to present a genuine issue of material fact on the plaintiffs' claim that the advances were incorrect or nonexistent.

### CONCLUSION

Based on the foregoing, the court finds that USM's motion for summary judgment is due to be granted. This finding should dispose of all of plaintiffs' claims, including their tort of outrage claim. The court notes, however, that the plaintiffs have been less than precise in describing their claims against USM. Consequently, the court will permit plaintiffs to file with the court a new declaratory action requesting an accounting, should the plaintiffs still believe their mortgage payments, based on the assumed amount of $36,310,[8] have been incorrectly allocated to principal and interest and remain incorrectly allocated. A judgment in

accordance with this memorandum opinion will be entered separately.

---

7. For instance, plaintiffs might have produced the affidavit of an expert testifying that the advances on the mortgage did not follow the custom and practice of the industry, the affidavit of Mr. and Mrs. Forbes regarding their understanding of the advances, the affidavit of a representative of Bass–Caton Insurance Agency regarding whether the insurance payments were received, or the affidavit of a bank official regarding the bank's understanding of the advances.

8. Plaintiffs may not, however, attack the original assumed mortgage amount of $36,310.00.