**CARRIE CONTRACTORS,
INC., Plaintiff,**

v.

**BLOUNT CONSTRUCTION GROUP
OF BLOUNT, INC., Defendant.**

Civil Action No. 95–D–795–N.

United States District Court,
M.D. Alabama,
Northern Division.

March 26, 1997.

Charles Nichols Parnell, III, James McCauley Smith, Montgomery, AL, for Plaintiff.

Clement Clay Torbert, III, Frank H. McFadden, Gregory Thomas, Montgomery, AL, for Defendant.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is Defendant Blount Construction Group's ("Blount") motion for partial summary judgment filed on January 29, 1997.[1] Plaintiff Carrie Contractors, Inc. ("Carrie"), responded on March 17, 1997.

After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the court finds that

---

1. On January 29, 1997, Blount filed a motion for "Leave to Seek Relief Pursuant to Rule 56 of the Federal Rules of Civil Procedure." On March 4, 1997, the court granted Blount's motion and set a briefing schedule for consideration of the underlying motion for partial summary judgment.

Blount's motion for partial summary judgment is due to be denied.

## JURISDICTION

Based upon 28 U.S.C. § 1332, the court properly exercises subject matter jurisdiction over this action. The parties do not contest personal jurisdiction or venue.

## FACTUAL BACKGROUND

This case is a breach of contract action involving the construction of a hanger at Westover Air Force Base in Chicopee Falls, Massachusetts. Blount was the general contractor and Carrie was the subcontractor in charge of the erection of the welding, structural, structural steel, and miscellaneous metal of the hangar. In exchange for successful completion of this work, Blount agreed to pay Carrie $1,338,300.00.

Carrie contends that Blount wrongfully breached the subcontract between the parties when it terminated the subcontract without cause and failed to pay monies in the amount of $485,000.00 for work performed and material supplied. In the alternative, Carrie contends that it supplied labor and materials and performed work for which Blount has failed to pay. Carrie asserts a claim of *quantum meruit* against Blount in the amount of $300,000.00 to offset these allegedly uncompensated services.[2]

Blount claims that Carrie defaulted on its subcontract and its right to proceed thereunder was terminated. Blount further contends in its Counterclaim that Carrie is indebted to it in the amount of $1,031,210.00 exclusive of interest, costs, and attorney's fees for the excess cost of completing the subcontract work. Blount argues, in the alternative, if the court should find that Carrie was terminated for convenience, Carrie is not entitled to any recovery.

In Blount's motion for partial summary judgment, it claims that under either Carrie's termination for convenience theory or Car-

---

2. The court stresses that Carrie's termination for convenience and *quantum meruit* theories are *alternative* methods of recovery.

rie's *quantum meruit* theory it has fulfilled its payment obligations. Blount claims that it has paid the amount of Carrie's substantiated costs and further that it has paid Carrie for all service performed on the job. Carrie contends that its costs are greater than the payments Blount made and that Blount has failed to recognize a substantial quantity of services performed on the subcontract.

### SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552-53. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356; *see also Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510.

### DISCUSSION

During the summary judgment determination it is not the court's role to act as a trier of fact, but instead its obligation is to identify areas where a material issue of fact exists. *See Anderson*, 477 U.S. at 249-50, 106 S.Ct. at 2510-11. While Carrie's evidence may suffer from numerous inconsistencies, it suffices to establish a material issue of fact on the issues vital to Blount's motion for partial summary judgment.

Article 27 of the rider to the subcontract between Blount and Carrie provides that a termination for Blount's convenience shall result in a payment to Carrie of the "reasonable cost of all work performed or materials

furnished including a reasonable profit thereon." Blount's Br. Ex. A., at p. 9. The rider further provides that no profit shall be granted for "unperformed work or unshipped materials" and that "[i]n no event shall the total sums paid the Subcontractor exceed the Subcontract price." *Id.*

■ On the breach for convenience theory, Blount claims that Carrie's cost on the job was $324,001.45, while Carrie claims that its cost was $444,460.93.[3] While Blount argues that Carrie's claim clearly contradicts Carrie's own accounting records, Blount fails to invalidate the testimony of Joe Cavaness, Carrie's President, who attests to the veracity of Carrie's higher figures. Blount claims that it paid Carrie either directly or on Carrie's behalf the grand total of $417,483.45. Blount claims that this total covers all of Carrie's supportable costs and still allows a reasonable profit margin. However, this amount is less than Carrie's claim for its total cost. Therefore, the court finds that there exists a material issue of fact on the termination for convenience prong of this action.

■ The court further finds that a material issue of fact precludes the granting of summary judgment on Carrie's *quantum meruit* theory. *Quantum meruit* damages are defined as "the amount for which services could have been purchased from one in the party's position at the time and place the services were rendered." *U.S. v. Algernon Blair, Inc.,* 479 F.2d 638, 641 (4th Cir.1973). In other words, *quantum meruit* damages compensate an aggrieved party for "the reasonable value of performance." *Id.* at 641.

■ Blount contends that Carrie's *quantum meruit* damages should be measured by referring to Carrie's cost of performance. Carrie, on the other hand, argues that these damages should be based upon the schedule of values established under this subcontract. Carrie contends that it is standard practice for general contractors and subcontractors to develop a schedule placing certain dollar values on completion of certain project subtasks. Under the mutually established schedule of values, Carrie argues that the "preparation and erection of trusses" is valued at $279,000.00. Carrie contends that since it completed a portion of this subtask, then it must be given financial credit for some or all of this subtask's value. According to Carrie, a proper determination of *quantum meruit* damages requires the court to add some or all of the erection subtask's value to the value of those subtasks already submitted for payment ($405,991.00).[4] Carrie also contends that the exact amount due it for partial completion of this subtask is a matter for jury determination.

Under either Blount's reasonable cost determination or Carrie's schedule of value determination, the court finds that there exists a material issue of fact over the satisfaction of Carrie's claim for *quantum meruit* damages. Based upon Carrie's claim that it had costs of $444,460.93 and Blount's claim that it paid $417,483.45, the court finds that there is a genuine dispute over the satisfaction of any *quantum meruit* damages which may be due in this action. Likewise, under the schedule of value method of calculation, the court finds a genuine dispute over a material issue of fact. Based upon the preceding analysis, the court finds that summary judgment is due to be denied under both of Carrie's alternative recovery theories. Therefore, Blount's motion for partial summary judgment is due to be denied.

### CONCLUSION

Accordingly, it is CONSIDERED and ORDERED that Blount's motion for partial summary judgement be and the same is hereby DENIED.

### ORDER

Before the court is Defendant Blount Construction Group's ("Blount") motion in limine filed February 18, 1997, requesting the court

3. It appears that Carrie's cost figure provided as part of mediation conflicts with Carrie's accounting records. However, as stated earlier, the court will not make credibility determinations, but leave this matter for the jury.

4. While this argument is not readily apparent from the face of Carrie's brief, a close reading of the brief persuades the court that this is the substance of Carrie's argument.

to exclude any testimony by Carrie's witnesses on the subject of losses Carrie allegedly suffered as the result of their wrongful termination or termination for convenience. Blount also requests that the court prohibit any of Carrie's witnesses from discussing Carrie's accounting records. Plaintiff Carrie Contractors, Inc. ("Carrie"), responded on March 3, 1997. After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the court finds that Blount's motion is due to be granted in part and denied in part.

Carrie claims that its role as Blount's subcontractor was terminated for Blount's convenience and, in the alternative, that even if Blount terminated Carrie for cause, Blount owes Carrie additional payments under the doctrine of *quantum meruit*. Blount claims that Carrie has been adequately compensated under both of Carrie's theories of recovery. Blount claims that none of the witnesses identified by Carrie possess any personal knowledge of the losses allegedly suffered by Carrie during the construction of a hanger at Westover Air Force Base in Chicopee Falls, Massachusetts. Blount argues via this motion that Carrie's witnesses and accounting records are an unreliable source of information concerning any of Carrie's alleged losses.

■ Blount first urges the court to exclude all of Carrie's witnesses because "[n]one of the witnesses listed on the plaintiff's witness list have personal knowledge of the losses allegedly suffered by the plaintiff as a result of the defendant's actions." However, Blount never explains the basis for this blanket assertion. Without more evidence of the incompetency of these witnesses, the court has no choice but to deny this portion of Blount's motion. Blount is, of course, free to renew this motion as to Carrie's witnesses during the trial.

■ Blount also urges the court to exclude any discussion of Carrie's accounting records in regards to Carrie's alleged losses in this action. Blount argues that these records were prepared almost seventeen months after the events in question and are not regularly kept business records. Federal Rule of Evidence 803(6) excepts certain "rec-

ords of regularly conducted activity" from the exclusion of the hearsay rule if those records was "made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness." The accounting records are dated 8/27/90 while Carrie's performance was terminated on or about March 6, 1989 which means that approximately seventeen and a half months passed between the events and the preparation of the records. This long gap suggests the Carrie's accounting records were not "made at or near the time" of the event they allegedly record. While courts should not mechanically apply time-based calculations to such a determination, long gaps between the events in question and the record do not meet 803(6) timeliness requirement. *See Missouri Pac. R.R. Co. v. Austin*, 292 F.2d 415, 422–23 (5th Cir.1961)(holding that the "timely recording" requirement is "not to be applied with any technical niggardliness"); *United States v. Kim*, 595 F.2d 755 (D.C.Cir. 1979) (holding that 1977 telex relaying information concerning 1975 deposits was not timely); *United States v. Lemire*, 720 F.2d 1327, 1350 (D.C.Cir.1983), *cert. denied*, 467 U.S. 1226, 104 S.Ct. 2678, 81 L.Ed.2d 874 (1984)(holding that a report summarizing events stretching over six months which was prepared nearly five months after last event was not timely). The court finds that Carrie's accounting records were not prepared at or near the time of the contract termination and therefore do not meet the requirements of Rule 803(6).

■ The court also finds based upon the affidavit of Joseph A. Cavaness ("Cavaness") that these records were not prepared in the normal course of business. While Cavaness states that "[i]t was the normal business practice of Carrie [ ] to prepare" such records, he also states that "[t]he basis for the preparation of these records" was "due to the

attempts by Carrie [ ] to settle under Article 27 of the subcontract, a claim submitted against Blount and the Corp of Engineers." The court finds that Cavaness's statement shows that these records were not prepared as part of a regularly conducted business but instead prepared largely for the purposes of litigation. Since these records were primarily prepared for the purposes of litigation, the court finds that they were not prepared in the normal course of business. *See United States v. Blackburn,* 992 F.2d 666, 670 (7th Cir.), *cert. denied,* 510 U.S. 949, 114 S.Ct. 393, 126 L.Ed.2d 341 (1993) ("In finding this report inadmissible under Rule 803(6), we adhere to the well-established rule that documents made in litigation are inadmissible under the business records exception.") (further citation omitted). Based upon the records' remoteness and the nature of their preparation, the court finds that they do not fit under the hearsay exception provided by 803(6) and should be excluded from trial.[1]

In response to Carrie's motion in limine, Carrie requests the court to pretermit any discussion of these records in the event that the court excludes them from trial. Carrie does not support this position outside of stating that such a finding "is only just and equitable." While the court questions Carrie's rationale for preventing Blount from discussing these records, it also questions a viable basis for admissibility of this evidence if offered by Blount. Based upon its earlier finding that the records are incompetent, the court is hard-pressed to fashion a permissible basis for their introduction by Blount. With the exclusion of their records, Carrie will be forced to rely on the personal knowledge of individual witnesses and Blount's records of the events in question. Even though the court cannot at this time envision a permissible purpose for Blount to introduce evidence of these records at trial, the court will not grant Carrie's request for a blanket exclusion of this evidence and instead will entertain Carrie's objections at trial.

Accordingly, it is CONSIDERED and ORDERED that Blount's motion in limine be and the same is hereby GRANTED in part and DENIED in part.

---

1. Carrie also argues that Blount's expert witness evaluation of the records "opened the door" for their admissibility. The court disagrees.