**UNITED STEEL WORKERS OF
AMERICA, AFL–CIO–CLC,
Plaintiff,**

v.

**SIMCALA, INC., Defendant.**

**No. CIV.A.00–D–119–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Aug. 21, 2000.

Glen M. Connor, Whatley Drake, LLC, Richard P. Rouco, Birmingham, AL, for Plaintiff.

James N. Nolan, Walston, Kary B. Wolfe, Wells, Anderson & Bains, LLP, Birmingham, AL, for Defendant.

## MEMORANDUM OPINION
## AND ORDER

DE MENT, District Judge.

Before the court are Plaintiff and Defendant's Cross–Motions For Summary Judgment. On May 4, 2000, Plaintiff filed its Motion For Summary Judgment ("Pl.'s Mot."), along with a Memorandum In Support thereof ("Pl.'s Mem."). On May 18, 2000, Defendant filed a Cross–Motion For Summary Judgment ("Def.'s Mot."), along with a Memorandum In Opposition To Plaintiff's Motion And In Support Of Defendant's Cross Motion ("Def.'s Mem."). On June 5, 2000, Plaintiff filed a Response To Defendant's Motion ("Pl.'s Resp."). After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that Plaintiff's Motion is due to be granted and Defendant's Motion is due to be denied.

## JURISDICTION AND VENUE

The court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 29 U.S.C. § 185 (Labor Management Relations Act). The Parties do not contest personal jurisdiction or venue.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). As the Supreme Court has explained the summary judgment standard:

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing FED. R. CIV. P. 56(c)).

The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548 (citing FED. R. CIV. P. 56(c)). The mechanics of satisfying the initial burden vary, however, depending upon which party, the movant or the nonmovant, bears the burden of proof at trial. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993) (detailing the nature of the parties' responsibilities when preparing or defending against a motion for summary judgment).

Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (citing FED. R. CIV. P.(e)). In meeting this burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Industrial Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." FED. R. CIV. P.; *see also Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348; *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

## BACKGROUND

Plaintiff, an unincorporated labor organization, represents employees in an industry affecting commerce within the meaning of 29 U.S.C. § 152(5), (6), and (7).[1] Defendant is an employer within the meaning of 29 U.S.C. § 152(2). Plaintiff and Defendant entered into a Collective Bargaining Agreement ("CBA") on August 8, 1995, which recognizes Plaintiff as the "sole and exclusive bargaining agency of [Defendant's] production and maintenance employees." (CBA § 1.1.) The CBA contains grievance procedures to resolve disputes between Plaintiff and Defendant. Specifically, the CBA provides that, "[s]hould differences arise . . . as to the meaning and

---

1. Plaintiff represents the employees in collective bargaining in respect to rates of pay, hours of work, and conditions of employment.

Plaintiff also files grievances on behalf of employees for alleged violations of the CBA.

application of the provisions of this Agreement, or should any trouble of any kind arise in [Defendant's] plant," the matter shall be submitted to final and binding arbitration. (CBA § 11.1.) [2]

Trouble arose on May 26, 1999, when Defendant discharged a probationary employee, Harry Harris ("Harris"). (McBee Aff. at 4.) Harris had worked at Defendant's facility since October 18, 1998. (*Id.*) He was initially employed by Multi–Staffing Services, a temporary employment agency, and assigned to work as a laborer on the "rock pile" outside of Defendant's plant. (*Id.*) On December 15, 1998, Harris was transferred to a "furnace laborer" position in the furnace department inside Defendant's plant. (*Id.*) On February 14, 1999, Defendant placed Harris on its payroll as a probationary employee in its furnace department. (*Id.*) Defendant terminated Harris' employment on May 26, 1999. (*Id.*)

On June 2, 1999, Plaintiff filed a grievance [3] ("the grievance") on behalf of Harris ("the grievant"), alleging that Harris was discharged without just cause in violation of the CBA. (Pl.'s Ex. 2.) Two days later, Defendant denied the grievance. (Pl.'s Ex. 3.) Defendant reasoned that, pursuant to the CBA, Harris' status as a probationary employee permitted Defendant to terminate his employment at its discretion. (*Id.*) Plaintiff appealed the matter through the mandatory grievance procedures set forth in the CBA. (Pl.'s Compl. ¶¶ 8–9.) Defendant denied the grievance at each step maintaining that because Harris was a probationary employee, Defendant could justifiably terminate his employment at its discretion. (Williamson Aff. ¶ 7.)

On October 14, 1999, Plaintiff requested that Defendant submit the dispute to arbitration, in accordance with the arbitration clause contained in the CBA. (Williamson

Aff. ¶ 8.) Defendant refused to do so, contending that the matter was not within the scope of said arbitration clause. (Def.'s Mem. at 3.) On February 7, 2000, Plaintiff commenced the above-styled action by filing a Complaint To Compel Arbitration And For Injunctive Relief ("Compl."). As stated, both Parties have filed Motions For Summary Judgment. The court now addresses said Motions.

## DISCUSSION

The Labor Management Relations Act, 29 U.S.C. § 173(d), states, in relevant part, that a "final adjustment by method agreed upon by the parties is hereby declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective bargaining agreement." This language, as construed by the Supreme Court of the United States, creates a strong presumption in favor arbitrating disputes arising out of collective bargaining agreements. *See Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United *Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); and United *Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) (collectively these three cases are referred to as the *Steelworkers Triology* ); *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). In concluding that arbitration is the optimal method of resolving collective bargaining agreement disputes, the Supreme Court has articulated and relied on three general principles of law.

■ First, if a contract contains an arbitration clause, there exists a presumption

---

2. Hereinafter, the court refers to this provision as "the arbitration clause."

3. The first step of the grievance process requires that a timely reported grievance be reduced to writing, signed by the employee and grievance committeeman, and submitted

to the Personnel Department. If the grievance is not settled in Step 1, the procedures provide for progressive appeals—first, to the Personnel Department, then to the International Union and Company representatives, and finally to an arbitrator.

of arbitrability in the sense that "an order to arbitrate should not be denied unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT & T*, 475 U.S. at 650, 106 S.Ct. 1415 (quoting *Warrior & Gulf*, 363 U.S. at 582–583, 80 S.Ct. 1347). In *Warrior & Gulf*, the Supreme Court further held, "[i]n the absence of any express provisions excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." 363 U.S. at 584–85, 80 S.Ct. 1347.

■ Second, a court should not examine the potential merits of the underlying claims when addressing a motion to compel arbitration under a collective bargaining agreement. *See American Mfg. Co.*, 363 U.S. at 568, 80 S.Ct. 1343. In other words, the issue of whether the underlying claim is arguable or not, is to be decided not by the court, but by the arbitrator. *Id.* As further explained in *American Mfg. Co.*:

> The Courts, therefore, have no business weighing the merits of the grievance, considering there was equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the Court will deem meritorious.

*Id.*

■ Third, arbitration is a matter of contract law. *See AT & T*, 475 U.S. at 648, 106 S.Ct. 1415 (quoting *Warrior & Gulf*, 363 U.S. at 582, 80 S.Ct. 1347). A party cannot be required to submit to arbitration a dispute which it has not agreed to arbitrate. *See id.*

■ The three principles of the *Steelworkers Trilogy* must guide a court's de-

termination of arbitrability. Collectively, these principles create a presumption of arbitrability that, in the absence of an express exclusion, is difficult to rebut. Only "the most forceful evidence" will overcome the presumption of arbitrability. *See Warrior & Gulf*, 363 U.S. at 584–85, 80 S.Ct. 1347. Given the broad language of the arbitration clause and the absence of evidence excluding probationary employees from the grievance process, the court finds that, in accordance with the principles of the *Steelworkers Trilogy*, this grievance must be submitted to arbitration. Thus, the court finds that Plaintiff is entitled to judgment as a matter of law.

■ The first of the *Steelworkers Trilogy* principles is that the presence of an arbitration clause creates a presumption of an agreement to arbitrate *all* issues. *See AT & T*, 475 U.S. at 650, 106 S.Ct. 1415 (quoting *Warrior & Gulf*, 363 U.S. at 582–83, 80 S.Ct. 1347). This is particularly the case when the arbitration clause is broadly worded. *See AT & T*, 475 U.S. at 650, 106 S.Ct. 1415; *Warrior & Gulf*, 363 U.S. at 576, 80 S.Ct. 1347. In the instant case, there is an arbitration clause contained in the CBA. Moreover, the clause in this case is broadly worded to provide for arbitration of differences "as to the meaning and application of the provisions of this agreement, or should trouble of any kind arise."[4] Thus, there is a presumption that the Union and Simcala intended to arbitrate all disputes. Absent an express exclusion or forceful evidence of the intent to exclude the subject matter of the grievance from arbitration, the court must find the grievance arbitrable. *See Warrior & Gulf*, 363 U.S. at 584–85, 80 S.Ct. 1347.

In the instant case, the parties are in conflict over the application of the second and third principles. The second principle provides that the court should not address the potential merits of the grievance in making its determination of arbitrability.

---

4. The court finds that the arbitration clause in this case is almost identical to the broadly worded clause of *Warrior & Gulf*, which provided for arbitration of "differences ... as to the meaning and application" of the agreement and "local trouble of any kind." 363 U.S. at 576, 80 S.Ct. 1347.

*See American Mfg. Co.*, 363 U.S. at 568, 80 S.Ct. 1343. The third principle is that, because arbitration is a matter of contract law, a party cannot be required to submit to arbitration a dispute which it has not agreed to arbitrate. Defendant argues that it is necessary for the court to determine whether the grievant was covered by the collective bargaining agreement containing the arbitration agreement in order to determine that the employer agreed to submit the dispute to arbitration. Further, in its Motion, Defendant contends that the court must interpret the terms "employee" and "probationary employee" to make such a determination. Thus, Defendant argues that the court must delve into the merits of the grievance, in violation of the second principle, in order to comply with the third principle.

In its Motion, Plaintiff argues that the scope of the arbitration clause is sufficiently broad to cover grievances related to unjust dismissal. Because the agreement does not explicitly limit the grievance process to non-probationary employees, Plaintiff avers that the court does not have to interpret the meaning of "employee" or "probationary employee." Additionally, Plaintiff asserts that interpretation of said terms would be an unnecessary determination of the merits of the grievance. *See American Mfg. Co.*, 363 U.S. at 568, 80 S.Ct. 1343. For the following reasons, the

court agrees that interpretation of the terms "employee" and "probationary employee" is unnecessary and the grievance should be submitted to arbitration.

First, the basis of Defendant's argument is that the following language removes a grievance for an alleged probationary employee from the ambit of the arbitration clause:

A.  Any person having one hundred-eighty (180) calendar days or less of continuous service shall be deemed to be a probationary employee. During such probationary period, the Company may separate said employee at its discretion. Article 15.2(A)

The court finds that this language does not, on its face, state that the union cannot file a grievance on behalf of an alleged probationary employee.[5] Instead, the court finds that the question of whether the grievant was or was not a probationary employee serves only as a defense to the merits of the grievance. Accordingly, the court need not, and should not, decide the meaning of "probationary employee."

Second, the Seventh Circuit cases upon which Defendant relies for its argument that the court must interpret the terms "employee" and "probationary employee" are clearly distinguishable, and therefore not persuasive in this case.[6] *See Local 744, International Brotherhood of Team-*

**5.**  The court notes that, if the arbitration clause was not intended to apply to probationary employees, then the parties could have negotiated express language excluding probationary employees from the reach of the grievance procedure. In *Local Union No. 787 International Union of Electrical Radio and Machine Workers v. Collins Radio Co.,* 317 F.2d 214, n. 7 (5th Cir.1963), one of the cases upon which Defendant relies, the arbitration agreement contained such an express exclusion. In that case, the union sought to compel arbitration of a grievance on behalf of former employees of the company who were permanently replaced during a strike. *See Collins Radio Co.,* 317 F.2d at 217–18. However, the new collective bargaining agreement, executed between the company and union after the employees were replaced, expressly excluded grievances "the basis for

which occurred prior to the date of the signing of this agreement" from arbitration. *See id.* at 220 n. 7. In contrast, the Steelworkers/Simcala agreement contains no express language which excludes probationary employees from the grievance process.

**6.**  Additionally, to the extent Defendant relies on the Seventh Circuit cases for the assertion that the union does not have standing to file a grievance for probationary employees, the Seventh Circuit cases do not reflect the law in this Circuit. In *Hyster*, the Seventh Circuit held that the issue of a union's standing was an issue for the court. 2 F.3d at 235. By contrast, the Eleventh Circuit has held that standing is a procedural issue to be determined by the Arbitrator. *See Aluminum Brick and Glass Workers International Union v. AAA Plumbing,* 991 F.2d 1545, 1550 (11th Cir. 1993).

*sters v. Hinckley & Schmitt, Inc.*, 76 F.3d 162 (7th Cir.1996); *Independent Lift Truck Builders Union v. Hyster Co.*, 2 F.3d 233 (7th Cir.1993). In both *Hyster* and *Hinckley & Schmitt*, there was an underlying tension between the court's duty not to rule on the merits of a grievance, and the court's duty to determine the issue of arbitrability. *See Terre Haute Newspaper Guild, Local No. 46 v. Thomson Newspapers, Inc.*, 68 F.Supp.2d 1028, 1033 (S.D.Ind.1999). For example, in *Hyster*, the subject matter of the grievance related to medical benefits for retired employees. 2 F.3d at 234. The dispute turned on the interpretation of the term "employee." If retired employees were within the definition of "employee," the grievance was arbitrable and likely meritorious. *See id.* at 235. Thus, the district court, by making a decision on arbitrability, would necessarily determine the merits of the grievance. *Id.* The district court deferred to arbitration because the determination of arbitrability also determined the merits of the grievance. However, the Seventh Circuit held that, "[i]f the court must, to decide the arbitrability issue, rule on the merits, so be it." *Id.* at 236.

Similarly, in *Hinckley & Schmitt*, there was tension between two of the *Triology* principles. In that case, the agreement applied only to listed categories of employees and to "all production and plant employees." *Hinckley & Schmitt*, 76 F.3d at 164. The union filed a grievance alleging that the collective bargaining agreement was being violated because non-union workers classified as pallet makers, oil checkers, and sanitation workers, were performing work covered by the bargaining agreement. *See id.* at 163. The union demanded that the employees at issue be placed in the bargaining unit and receive benefits under the collective bargaining agreement. *See id.* The employer refused to submit the grievance to arbitra-

tion and contended that the workers' tasks did not fall into one of the designated categories covered by the agreement. *Id.* The Seventh Circuit explained that, if the phrase "all production and plant employees" included the oil checkers and pallet makers, then the grievance would have to be arbitrated and the union would likely be successful. *Id.* at 164. However, if the court determined that the phrase did not include the oil checkers and pallet makers, then the agreement and its arbitration clause did not apply and the grievance lacked merit. *See id.* The Seventh Circuit then directed the district court to make the coverage determination even though it would essentially result in the determination of the grievance itself. *Id.*

The tension present in *Hinckley & Schmitt* and *Hyster* is not present in this case. Here, the subject matter of the grievance is whether the grievant was discharged without cause. As this court has already found, infra, the agreement in this case does not contain a limit on the right of the union to utilize the grievance process for probationary employees. Because no evidence exists to exclude probationary employees from the grievance process, an interpretation of the term would be a needless evaluation of the merits of the claim.

Thus, in determining the arbitrability of this matter, the court must return to the presumption set out in the first principle of the *Steelworkers Trilogy*. Again, the presence of an arbitration clause creates a presumption of an intent to arbitrate all issues. *See Warrior & Gulf*, 363 U.S. at 582–83, 80 S.Ct. 1347. In the absence of an express provision excluding the subject matter from arbitration, "only the most forceful evidence of a purpose to exclude" a claim can prevail. *Warrior & Gulf*, 363 U.S. at 584–85, 80 S.Ct. 1347. The court finds that Defendant has failed to produce such evidence.[7]

7. The court also notes that the decision of the General Counsel of the National Labor Relations Board (NLRB), upon which Defendant relies, if relevant at all, does not relate to a determination of arbitrability but rather to the

merits of the underlying grievance. The issue before the NLRB was whether the company violated the National Labor Relations Act by it failure and refusal to accept and process particular grievances. The issue in the in-

Defendant offers the Union's past practice of excluding rock pile jobs from the bargaining unit as evidence of a purpose to exclude this grievance from arbitration. However, Defendant's evidence hardly qualifies as "the most forceful evidence" and therefore, does not alter the court's analysis. Moreover, the grievant, as a worker in the furnace department, was undisputably within a bargaining unit classification at the time of discharge. The effect of where his prior service occurred is an issue for the arbitrator not this court.

Given the broad language of the arbitration clause in this case and the absence of any language which limits the right to submit the issue of unjust discharge to arbitration, this court finds that Plaintiff's Motion is due to be granted and that Defendant's Motion is due to be denied.

### ORDER

Accordingly, it is CONSIDERED and ORDERED that Plaintiff's Motion For Summary Judgment be and the same is hereby GRANTED and Defendant's Cross Motion For Summary Judgment be and the same is hereby DENIED.

A judgment in accordance with this Memorandum Opinion And Order will be entered separately.

### *JUDGMENT*

In accordance with the attached Memorandum Opinion it is CONSIDERED, ORDERED, and ADJUDGED that summary judgment be and the same is hereby GRANTED in favor of Plaintiff and against Defendant.

It is further CONSIDERED, ORDERED, and ADJUDGED that Defendant submit the grievance to arbitration in accordance with the Collective Bargaining Agreement between the parties.

It is further CONSIDERED, ORDERED, and ADJUDGED that all costs herein incurred be and the same are hereby taxed against Defendant, for which let execution issue.

---

stant case is whether the grievant was unjustly discharged, which is unrelated to whether the company failed to process grievance in accordance with the National Labor Relations Act.